UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CATHY MINIX, *et al.*, | ) |
| Plaintiffs | ) |
| v. | ) CASE NO. 3:06-CV-398RM |
| ANDREW PAZERA, *et al.*, | ) |
| Defendants | ) |

OPINION AND ORDER

On October 26, 2004, plaintiffs Steven Zick and his mother Cathy Minix sued the defendants for injuries Steven Zick suffered while he was a juvenile detainee at the South Bend Juvenile Facility, Northeast Juvenile Facility in Fort Wayne, and Plainfield Juvenile Correctional Facility. Mr. Zick's suit was pursuant to 42 U.S.C. § 1983 for constitutional violations, and Ms. Minix sued in her capacity as Mr. Zick's mother and natural guardian and under Indiana law in her own capacity. The court granted the defendants' motion for partial summary judgment on July 27, 2005, on the basis that Mr. Zick failed to exhaust available administrative remedies as the Prison Litigation Reform Act requires, dismissed the federal claims without prejudice, and remanded the state law claims to St. Joseph County Superior Court. In March 2006, the plaintiffs moved to reinstate their federal claims, arguing that since Mr. Zick was no longer a prisoner the PLRA exhaustion requirement no longer applied. The superior court granted that motion. Plaintiffs filed their amended complaint and the defendants again removed

the case to federal court. The defendants have moved for partial summary judgment, and the plaintiffs have moved for oral argument. For the reasons stated below, the court denies the defendants' motion for partial summary judgment and denies the plaintiffs' motion for oral argument as moot.

This action arises from incidents Steven Zick alleges occurred while he was in the custody of the Department of Corrections, between August 22, 2002 and May 7, 2003. Mr. Zick was sentenced to incarceration for committing battery. Mr. Zick alleges that he was beaten on several occasions while he was incarcerated, including once when other inmates beat him with socks containing padlocks. Mr. Zick also claims that another inmate raped him while three inmates held him down. Mr. Zick claims that the beatings and rape occurred due to the negligent supervision of inmates at the facilities, and due to the negligent hiring, training, and retention of staff at the facilities by the State of Indiana.

Mr. Zick also asserts claims against the medical personnel at the same facilities. He alleges that he received improper care after being beaten. Mr. Zick also claims that he was taken off medications without proper evaluation and was not monitored appropriately after that. He further states that he was restrained and forced to take a vaccination to which he had refused consent. Lastly, Mr. Zick claims he became dehydrated when his intake of food and liquids was not monitored.

When Mr. Zick was incarcerated, the DOC permitted juvenile offenders, referred to as students, to submit grievances concerning matters of concern to

them. Under DOC procedures, a grievance ordinarily was required to be filed within two business days after the event being grieved. The first step in the grievance procedure was to file a complaint, which was addressed by a staff member assigned to handle such matters. If the student was not satisfied with the response to his complaint, he could appeal. If the student was not satisfied with the Step 2 appeal response, he could pursue his complaint to a three-member grievance committee in Step 3. If the committee's response didn't satisfy the student, he could appeal to the superintendent of the facility or his designee (step 4) and then to the regional director or his designee (Step 5).

The defendants state that while not all matters were grievable, it would be proper for a student to submit grievances asserting that he was in danger from another student, that another student had attacked him, or that facility staff were not protecting him from danger. An investigation would be conducted if a student submitted such a grievance. If the investigation revealed merit to the grievance, further action would be taken. Among the possible courses of action were separation of the threatened student from those who would harm him or had harmed him; punishment of any person who had harmed the student; and sanctions, up to and including referral to law enforcement authorities for criminal prosecution, imposed upon any staff member who had knowingly failed to protect a student from a known threat or danger.

The defendants claim that Mr. Zick never pursued a grievance beyond the second level, that he never pursued a grievance in which he complained that he

3

had been harmed in any way by any other person, and that he did not pursue a grievance in which he complained that he had not been properly protected from danger at the hands of another person. The only grievance filed by Mr. Zick alleged that one of the officers was engaged in an inappropriate relationship with a student and that Mr. Zick needed underwear, socks and shirts.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). There is no genuine issue of material fact when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in its favor. Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said

before, summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" (*quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

> [T]he plain language of Fed. R. Civ. P. 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element with respect to which she has the burden of proof.

Celotex v. Catrett, 477 U.S. 317, 322-23 (1986).

The defendants say the plaintiffs' federal claims should be dismissed and the case remanded to state court again because Mr. Zick failed to exhaust administrative remedies as required by the PLRA. The Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) states: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The plaintiff's status at the time he brings suit is used to determine whether the plaintiff is a prisoner under the PLRA. Witzke v. Femal, 376 F.3d 744, 750 (7th Cir. 2004). An action is brought for purposes of the PLRA when the complaint is tendered to the clerk.

5

Ford v. Johnson, 362 F.3d 395, 400 (7th Cir. 2004). Since Mr. Zick was a prisoner when he filed his first complaint in his action, the defendants say. the PLRA's exhaustion requirement still applies. The defendants adamantly assert that Mr. Zick, a former prisoner, cannot avoid the exhaustion requirement by filing an amended complaint after he is released reciting the same claims that were dismissed previously because of failure to exhaust administrative remedies.

The plaintiffs respond that analyzing their claim under the PLRA is inappropriate because Mr. Zick wasn't incarcerated when he amended his complaint. The Zicks argue that a claim dismissed without prejudice for failure to exhaust available administrative remedies can be re-filed so long as it is not too late to raise the claim. The Zicks, therefore, revived a previously dismissed claim by filing an amended complaint after Mr. Zick's release from a juvenile facility. Once an amended complaint is filed, the original complaint is no longer force and plaintiffs' claims begin anew. Flannery v. Recording Indus. Ass'n of Am., 354 F.3d 632, 638 n.1 (7th Cir. 2004). Therefore, the PLRA no longer governs Mr. Zick or his claims.

For prisoners filing suit, the PLRA requires that available administrative remedies must have been exhausted at the time that the suit is filed. In Perez v. Wisconsin Dept. Of Corrections, 182 F.3d 532, 533-34 (7th Cir. 1999), a prisoner filed a § 1983 claim alleging that he was subjected to cruel and unusual punishment when prison officials didn't perform back surgery after he fell in the shower and instead recommended the more conservative approach of exercise,

6

physical therapy, and basic pain control medication. Mr. Perez didn't obtain administrative review of his treatment before filing suit, but exhausted administrative remedies before the court issued its summary judgment opinion. In the final paragraph of that decision granting summary judgment on the merits, the district court determined that even though Mr. Perez had failed to exhaust administrative remedies, a dismissal without prejudice would simply require him to file another claim, which would run counter to the policy of judicial economy. Id. at 534. The Court of Appeals disagreed, holding that since Section 1997e(a) states that "[n]o action shall be brought with respect to prison conditions...until such administrative remedies as are available are exhausted", exhaustion is a precondition to suit. Id. at 534-35. Therefore, "judges must place enforcement of the statute over a concern for efficient docket management." Id. At 536. The court concluded that "a case filed before exhaustion has been accomplished must be dismissed." Id. at 537.

The PLRA does not apply to a prisoner who brought suit after he had been released and was "no longer 'confined in a jail, prison, or other correctional facility.'" Kerr v. Puckett, 138 F.3d 321, 322 (7th Cir. 1998) (*citing* 42 U.S.C. § 1997e(a)) . The law distinguishes between current and former prisoners because "Congress deemed prisoners to be pestiferous litigants because they have so much free time on their hands and there are few costs to filing suit." Id. at 323. Whereas after release, "[o]pportunity costs of litigation rise... diminishing the need for special precautions against weak suits." Id. Even if a prisoner has a case

7

dismissed for failure to exhaust available administrative remedies, they can refile the exact same complaint once they are released from prison without having to satisfy the exhaustion requirement.

> A former prisoner, after release from custody, may file the identical case (as a nonprisoner-plaintiff) but without the exhaustion requirement and other restrictions imposed by the PLRA...The PLRA does not apply to a plaintiff who is a nonprisoner when the complaint is filed, even if the complaint deals with matters which occurred during imprisonment.

Kackley v. CMS, No. 8:05CV284, 2006 WL 120150, *1 n.1 (D.Neb. Jan. 17, 2006).

Although neither side has located a case that directly addresses whether a prisoner may file an amended complaint once he is released from prison and avoid the exhaustion requirement contained in the PLRA, the analysis applied by the court in Barnes v. Briley, 420 F.3d 673 (7th Cir. 2005), provides the most guidance in this matter. In Barnes, the court allowed a prisoner to amend his complaint to include claims that were exhausted during the pendency of his suit. In October 2000, Mr. Barnes filed a pro se complaint against the Center For Disease Control under the Federal Tort Claims Act, alleging that he had been exposed to hepatitis as a result of poor sanitation in prison and being housed with infected inmates. Id. at 675. He alleged that the CDC knew that the inmates infected with HIV and hepatitis were entering Illinois prisons and that a significant risk existed that the diseases would be transferred to other prisoners. Id. After counsel investigated Mr. Barnes's case, he determined that the circumstances gave rise to a set of claims against prison administrative and medical personnel. Mr. Barnes then initiated the

prison grievance process. Id. In August 2003, Mr. Barnes moved for leave to dismiss all claims against the CDC and to file an amended complaint to substitute a claim for violations of 42 U.S.C. § 1983 against prison personnel. Id. at 676. The defendants moved to dismiss the suit for failure to exhaust administrative remedies before filing his original complaint. Id. The court found that Mr. Barnes properly exhausted his administrative remedies as required by the PLRA. When Mr. Barnes filed his original complaint he stated properly exhausted claims against the CDC under the FTCA. When counsel discovered circumstances that supported different claims against different defendants, Mr. Barnes initiated the prison grievance process as the PLRA requires. Id. at 678. Once he exhausted those remedies, and with the district court's leave, Mr. Barnes substituted his § 1983 claims. "It is evident, therefore, that Mr. Barnes did not attempt to replead improperly exhausted claims in his amended complaint. Rather, he asserted properly exhausted FTCA claims in his original complaint and later he raised new, properly exhausted § 1983 claims against new defendants." Id. The court further stated, "[t]he filing of the amended complaint was the functional equivalent of filing a new complaint." Id.

Given the analysis in Barnes, the court finds the PLRA's exhaustion requirement no longer applies to Mr. Zick. In Barnes, circumstances changed once the case was filed, prompting Mr. Barnes to exhaust his administrative remedies and amend his complaint. When Mr. Barnes filed his amended complaint, he had satisfied the requirements of the PLRA and was able to proceed with his § 1983

claims. Similarly, once Mr. Zick was released from custody, the PLRA no longer applied, so he sought to amend his complaint. The filing of plaintiffs' amended complaint was the equivalent of filing a new complaint. When he filed the amended complaint, Mr. Zick was no longer incarcerated and so no longer subject to the PLRA requirements. The court, therefore, DENIES defendants' motion for partial summary judgment (Doc. No. 8), and DENIES plaintiffs' motion for oral argument and hearing (Doc. No. 14) as moot.

SO ORDERED.

ENTERED:  November 28, 2007

/s/ Robert L. Miller, Jr.

Chief Judge
United States District Court